1
2
3
4                          UNITED STATES DISTRICT COURT
5                          EASTERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7  **SAMI MITRI,** | **CASE NO. 1:10-CV-00538 AWI SKO** |
| 8              **Plaintiff** | |
| 9           **v.** | **ORDER RE DEFENDANT'S RENEWED RULE 50(b) MOTION FOLLOWING REMAND** |
| 10 **WALGREEN COMPANY,** | |
| 11             **Defendant** | (Doc. No. 145) |

12

13          This was a wrongful termination in violation public policy case brought by Plaintiff Sami

14    Mitri ("Mitri") against his form employer Defendant Walgreen Co. ("Walgreens"). The jury found

15    for Mitri and awarded him $88,000 in compensatory damages (all economic) and $1.155 million

16    dollars in punitive damages.  In post-trial motions, the Court *inter alia* granted part of Walgreens's

17    Rule 50(b) motion as to punitive damages, but did not address all of Walgreens' arguments.  On

18    appeal, the Ninth Circuit affirmed in part and reversed in part this Court's rulings, and remanded

19    the matter.  See Doc. No. 138.  The Ninth Circuit remanded in order for this Court to address

20    whether the punitive damages award should be reduced as constitutionally excessive.  See id.

21    Also, as part of a decision denying rehearing, the Ninth Circuit stated that this Court may consider

22    Walgreens's arguments regarding whether Market Vice President Robert Hasty ("Hasty") acted

23    with "oppression, fraud, or malice," or authorized or ratified such conduct.  See Doc. No. 141.

24          Following the remand, the Court ordered the parties to brief whether the punitive damages

25    award was excessive, and whether there was sufficient evidence of malice, fraud, oppression,

26    authorization or ratification by Hasty.  See Doc. No. 145.  All briefing has now been received.

27    After considering the arguments and the Ninth Circuit's remand, the Court will deny Walgreens's

28    renewed motion in its entirety.

## RULE 50(b) FRAMEWORK

After a jury has returned a verdict, Rule 50(b) permits a party to renew its prior Rule 50(a) motion for judgment as a matter of law.  See Fed. R. Civ. P. 50(b); EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).  A renewed motion for judgment as a matter of law is appropriate when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013); Harper v. City of L.A., 533 F.3d 1010, 1021 (9th Cir. 2008).  If there is "such relevant evidence as reasonable minds might accept as adequate to support [the jury's] conclusion," then a Rule 50(b) motion should be denied. Hagen, 736 F.3d at 1257.  When considering a Rule 50(b) motion, the court should review all of the evidence in the record in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000); see Harper, 533 F.3d at 1021.  However, "a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence," nor may a jury's conclusion be based on mere speculation.  Lakeside-Scott v. Multnomah Cnty, 556 F.3d 797, 802-03 (9th Cir. 2009).  The court "may not make credibility determinations or weigh the evidence" and "must disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves, 530 U.S. at 150-51; see Harper, 533 F.3d at 1021. "The court must accept the jury's credibility findings consistent with the verdict . . . [and] may not substitute its view of the evidence for that of the jury."  Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001).  "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  McCollough v. Johnson, Rodenburg, & Lauinger, LLC, 637 F.3d 939, 955 (9th Cir. 2011); Harper, 533 F.3d at 1021.  Finally, because a Rule 50(b) motion is a renewed motion, "a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."  Go Daddy, 581 F.3d at 961; Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

2

**DEFENDANT'S MOTION**

**1.** **Sufficiency Of The Evidence**

*Defendant's Arguments*

Walgreens argues that that there is only one reasonable conclusion that could have been reached in this case -- Mitri failed to establish by clear and convincing evidence that Hasty either engaged in oppression, fraud, or malice, or authorized or ratified such conduct by others.  First, none of the conduct by Hasty comes close to meeting the legal definitions of oppression, fraud, or malice.  The record demonstrates that Hasty spoke to Mitri about Mitri's concerns over a supervisor and responded to those concerns in a supportive manner.  Hasty participated in a conference call in which he concurred with the termination decision based upon information provided to him by others concerning Mitri violating a "Final Written Warning" about 18 to 20 different times.  Hasty did not participate in the investigation of Mitri's complaints concerning billing practices.  Therefore, the evidence showed that Hasty merely concurred in a termination decision based on information about Mitri that was relayed to him by Mitri's supervisors.  Even if Mitri's termination was wrongful, it was not malicious, oppressive, or fraudulent.  Second, for Hasty to authorize or ratify the conduct of Mitri's supervisors, the evidence must show by clear and convincing evidence that Hasty had actual knowledge of the conduct and its outrageous nature.  The record does not demonstrate actual knowledge by Hasty, rather it shows that Hasty acted based on what he was told by others about Mitri.  Because there was no malice, oppression, fraud, authorization, or ratification by Hasty, the punitive damages award cannot stand.

*Plaintiff's Opposition*

Mitri argues that Walgreens's is procedurally barred from challenging whether Hasty ratified or authorized improper conduct of others.  In Walgreens's Rule 50(a) motion, Walgreens did not did argue that there was insufficient evidence of Hasty's ratification of wrongful conduct or of Hasty's involvement in wrongful conduct.

Alternatively, the evidence is sufficient to show that Hasty was involved with Mitri and the decision to improperly terminate him at every step.  Hasty overruled instructions that had been given to Mitri, was aware of Mitri's complaints and the warning, was part of the collaborative

1  effort to terminate Mitri, and never penalized any subordinates for their treatment of Mitri.  Hasty

2  knew of Mitri's most recent complaints of Medicare fraud and that the grounds cited for Mitri's

3  termination were pretext.  Making all reasonable inferences in Mitri's favor, a jury could

4  reasonably conclude that Hasty's conduct was oppressive, malicious, or fraudulent, or that Hasty

5  ratified the despicable conduct of Mitri's supervisors.

6      *Legal Standard*

7      A corporate employer may not be held liable for punitive damages arising from the acts of

8  an employee unless "an officer, director, or managing agent of the corporation . . . authorized or

9  ratified the wrongful conduct for which the damages are awarded or was personally guilty of

10  oppression, fraud, or malice."  Cal. Civ. Code   § 3294(b).  "Malice" is "conduct which is

11  intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on

12  by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ.

13  Code § 3294(c)(1).  "Oppression" is "despicable conduct that subjects a person to cruel and unjust

14  hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).  "Fraud" is

15  "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant

16  with the intention on the part of the defendant of thereby depriving a person of property or legal

17  rights or otherwise causing injury."  Cal. Civ. Code § 3294(c)(3).  "For purposes of determining

18  an employer's liability for punitive damages, ratification generally occurs where, under the

19  particular circumstances, the employer demonstrates an intent to adopt or approve oppressive,

20  fraudulent, or malicious behavior by an employee in the performance of his job duties."  College

21  Hosp. Inc. v. Superior Ct., 8 Cal.4th 704, 726 (1994).  "Corporate ratification in the punitive

22  damages context requires actual knowledge of the conduct and its outrageous nature."  Id.

23      *Discussion*

24      Initially, the Court does not agree that Walgreens has waived the right to challenge

25  whether Hasty's actions constitute malice, fraud, oppression, ratification, or authorization.  During

26  the Rule 50(a) arguments, Walgreens's counsel indicated that there was no evidence that a

27  managing agent engaged in any conduct that could support punitive damages.  In opposition,

28  Mitri's counsel discussed *inter alia* conduct that would support punitive damages.  Walgreen's

1    counsel then replied that there was no evidence of malice, oppression, or fraud.  Finally, the Court

2    addressed whether there was conduct that could be considered despicable.  See Doc. No. 133 at

3    1488-1532.  Therefore, the sufficiency of the evidence to support a finding of malice, fraud,

4    oppression, ratification, or authorization was part of Walgreens's Rule 50(a) motion.  See id.

5    Walgreens may re-raise the issue in this Rule 50(b) motion.[1]  See Go Daddy, 581 F.3d at 961.

6         Here, viewed in the light most favorable to Mitri, see Harper, 533 F.3d at 1021, the

7    evidence showed:[2]  (1) Mitri made multiple complaints about billing fraud to his supervisors and

8    others higher up in the corporate hierarchy; (2) Scalzitti and Guillen, with the approval of

9    Murray,[3] issued Mitri a Final Written Warning on May 11, 2009, shortly after Mitri complained

10   about fraudulent billing for the first time (April 25, 2009); (3) the progressive disciplinary system

11   was not applied to Mitri; (4) the Final Written Warning required Mitri to inform his supervisors or

12   the store manager whenever he had to stay beyond his shift to help a customer; (5) the relevant

13   store manager was not told that Mitri had to inform him (the manager) about staying beyond shift

14   to help a customer; (6) the overtime Mitri was accumulating was de minimis; (7) Mitri contacted

15   Hasty in May 2009 regarding fraudulent billing and the Final Written Warning issued by Scalzitti;

16   (8) Hasty met with Mitri in June 2009 regarding billing fraud and the Final Written Warning; (9)

17   although Hasty stated that Mitri should stay late to help customers, Hasty nevertheless permitted

18   Scalzitti and Guillen to require only Mitri to report when he worked late to take care of a

19   customer; (10) Hasty directed Mitri to contact his supervisors, i.e. Scalzitti or Guillen, regarding

20   any further instances of fraudulent billing; (11) in December 2009 Mitri complained about

21   fraudulent billing to Lisa Warinner (a Walgreens's Loss Prevention officer); (12) Mitri was told by

22   Warinner that if he found evidence of improper billing, then he was to give the evidence to her

---

[1] The Court notes that Walgreens also raised the issue in its first Rule 50(b) motion.  See Doc. No. 105 at 17.

[2] These facts are taken from the trial testimony of Mitri, Scalzitti, Guillen, and Hasty.  The parties are aware of the relevant factual background, and a more in depth discussion of the facts of this case may be found in the order on Walgreens's motion for summary judgment.  See Doc. No. 41.  The evidence at trial was conflicting and many facts were disputed.  Walgreens's evidence, if believed, would have supported a defense verdict.  However, under Rule 50, all reasonable inferences are made in the non-moving party's favor.  Harper, 533 F.3d at 1021.

[3] Chris Scalzitti was Mitri's direct supervisor, Robert Guillen was Scalzitti's direct supervisor, Robert Hasty was Guillen's direct supervisor, and Chris Murray was a member of Walgreens's Human Recources department.  Mitri's complaints of billing fraud involved stores over which Scalzitti, Guillen, and Hasty had authority.

directly and not to Scalzitti or Guillen, which was contrary to what Hasty had told Mitri; (13)
Warinner also told Mitri that it was not his job to report suspected billing fraud to the government;
(14) Mitri was terminated on January 8, 2010, shortly after he had again complained about billing
fraud in December 2009; (15) Hasty authorized the termination of Mitri during a teleconference
with Scalzitti, Guillen, and Murray; (16) Hasty, Scalzitti, Guillen, and Murray discussed Mitri
working in excess of scheduled hours and about Mitri's complaints of billing fraud during the
teleconference; (17) Hasty, Guillen, and Scalzitti (and possibly Murray) had multiple telephone
calls about Mitri; (18) Hasty received information from Guillen about Mitri prior to the
termination decision, including Mitri's complaints and the Final Written warning; (19) Hasty
agreed that the official reason for Mitri's termination would be violation of the Final Written
Warning; (20) Hasty agreed to the termination prior to the grounds for termination being fully
investigated; (21) no attempt was made to identify some of the alleged instances of Mitri's failure
to comply; (22) despite a list that documented instances in which Mitri allegedly violated the
terms of the Final Written Warning, Mitri actually had followed the warning; (23) after the final
teleconference between Hasty, Scalzitti, Guillen, and Murray, Mitri was falsely told by Scalzitti
that he was being suspended and investigated, when in fact the decision to terminate had been
made; (24) Scalzitti did not tell Mitri for what he was being suspended or investigated; (25)
Murray advised Scalzitti (presumably during the final teleconference involving Hasty and Guillen)
to tell Mitri that Mitri was suspended and under investigation, and not that he was terminated; (26)
when Scalzitti and Guillen finally terminated Mitri, Mitri was not permitted to give his side of the
story or to answer any of the charges against him; (27) despite Mitri's reports implicating Scalzitti
and/or Guillen, Hasty did not ensure that Scalzitti or Guillen were investigated regarding
fraudulent billing, and Walgreens's policy required an investigation; and (28) Hasty did not take
any disciplinary action against Guillen or Scalzitti regarding either billing fraud or their treatment
of Mitri.  Additionally, the jury expressly found that Walgreens terminated Mitri's employment
because Mitri made complaints of billing fraud, and that Walgreens would not have terminated
Mitri, but for his complaints.  See Doc. No. 92.  These findings are a clear rejection of the
testimony from Hasty, Scalzitti, Guillen, and Murray that the only reason for Mitri's termination

1   was Mitri's violation of the Final Written Warning.

2          From the above evidence and express finding, a reasonable jury could have found that

3   Walgreens's conduct towards Mitri was heavy handed, unfair, deceptive, false, harmful to Mitri's

4   reputation, and done in willful disregard to Mitri's right to be free from retaliation.  The evidence

5   indicates that Hasty ratified Scalzitti and Guillen's conduct towards Mitri, authorized both the

6   termination and the procedure for terminating Mitri, agreed to terminate Mitri because of the

7   reports of billing fraud, and agreed to use a false reason involving misconduct to justify Mitri's

8   termination.  Cf. Thomas v. Costco Wholesale Corp., 2014 U.S. Dist. Lexis 27527, *28-*29 (C.D.

9   Cal. Mar. 3, 2014) (discussing *Scott v. Phoenix Schls., Inc.* and holding that the employer engaged

10  in despicable conduct where there was a program of unwarranted criticism of an employee

11  following whistleblowing); accord Scott v. Phoenix Schls., Inc., 175 Cal.App.4th 702, 717 (2009)

12  (holding that punitive damages were not appropriate where there was an absence of a false reason

13  to hide an illegal termination and an absence of evidence showing a pattern of unwarranted

14  criticism).  Hasty is linked to Mitri's termination and the conduct surrounding the termination by

15  Mitri's May 2009 discussions with Hasty, Guillen keeping Hasty informed of Mitri's billing

16  complaints, Hasty's participation in multiple phone calls in which Mitri's behavior and complaints

17  of billing fraud were actually discussed, and Hasty's agreement to terminate.  It is true that Hasty

18  denied knowledge of certain events, and denied that Mitri's termination was based on anything

19  other than a violation of the Final Written Warning.  However, the jury was not required to believe

20  Hasty's testimony.  See Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2013); United

21  States v. Nicholson, 677 F.2d 706, 709 (9th Cir. 1982); United States v. Hood, 493 F.2d 677, 680

22  (9th Cir. 1974).  In fact, given the jury's liability finding, it is apparent that they did not find Hasty

23  (or Scalzitti or Guillen or Murray) to be credible.  See Nicholson, 677 F.2d at 709 ("A trier of fact

24  is not compelled to accept and believe the self-serving stories of vitally interested defendants.").

25          In sum, a reasonable jury could have found by clear and convincing evidence that Hasty

26  engaged in, authorized, and ratified oppressive, malicious, and fraudulent conduct towards Mitri.

27  Cf. Mitri v. Walgreen Co., 566 Fed. Appx. 606, 607 (9th Cir. 2014) (listing evidence and

28  concluding it was sufficient to show that Hasty was a managing agent by clear and convincing

7

1     evidence); <u>Thomas</u>, 2014 U.S. Dist. Lexis 72527 at \*28-\*29; <u>Scott</u>, 175 Cal.Ap.4th at 717.

2     Walgreens's renewed Rule 50(b) motion regarding the sufficiency of the evidence to support

3     punitive damages will be denied.[4]

4

5     **2.**    <u>**Amount of Punitive Damages**</u>

6     <u>*Defendant's Argument*</u>

7     Walgreens argues that the punitive damages award is excessive and should be reduced.

8     The degree of reprehensibility of Walgreens's conduct is low.  The jury determined that the harm

9     to Mitri was economic only.  No harm to the health or safety of others was involved.  There is no

10     evidence of financial vulnerability by Mitri.  There was no evidence of repeated actions or pattern

11     by Hasty with respect to whistleblowers.  Walgreens also had policies in place to protect against

12     over-billing and to protect whistleblowers.  Further, the disparity between Mitri's actual harm and

13     the punitive damages award is nonsensical.  The ratio of punitive damages to actual damages is

14     13.1 to 1.  This is well beyond the single digit multiplier suggested by the Supreme Court, and the

15     one to one ratio in cases involving recovery of limited damages.

16     <u>*Plaintiff's Opposition*</u>

17     Mitri argues that because Walgreens did not raise the issue of excessive punitive damages

18     in its Rule 50(a) motion, it has waived any challenge to the punitive damages awarded.

19     Alternatively, Mitri argues that a reduction of the punitive damages award is improper

20     because Walgreens's conduct was highly reprehensible.  First, Mitri suffered economic harm, and

21     Walgreens knew that its conduct risked causing Mitri emotional distress.  Also, retaliation is

---

[4] The Court notes that Mitri argues that the "clear and convincing" evidence standard should not apply to the issue of ratification or authorization.  Mitri's argument is meritless.  First, no case law is cited in support of Mitri's argument. Second, the Ninth Circuit held that Mitri waived arguments regarding the "clear and convincing" evidence standard with regards to the issue of "managing agent" because he did not object at trial.  <u>See</u> <u>Mitri</u>, 566 Fed. Appx. at 607 n.1. Mitri also made no objections to any other aspect of punitive damages and the "clear and convincing evidence" standard at trial.  <u>See</u> Doc. No. 133 at 1583-85, 1588, 1596-1601, 1604-05; Doc. No. 134 at 1611.  Third, Mitri submitted CACI instruction 3946.  <u>See</u> Doc. No. 69 at Instruction 45.  The instruction requires ratification and authorization to be proven by clear and convincing evidence.  <u>See</u> <u>id.</u>  The relevant portion of CACI 3946 was given to the jury.  <u>See</u> Doc. No. 95.  For Mitri to now challenge the "clear and convincing evidence" standard is improper. <u>See</u> <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1084-1085 (9th Cir. 2014) (discussing invited error and holding that a party could not "turn around and challenge the instruction containing some of the very text he proposed, on the new theory that it's unsupported by the evidence."); <u>999 v. C.I.T. Corp.</u>, 776 F.2d 866, 870 (9th Cir. 1985) ("Having requested the instruction, [defendant] may not complain of any error in it.").

treated identically to intentional discrimination, and both are considered extremely reprehensible. Second, Walgreens's conduct endangered the health of others because it deprived customers of Walgreens's best pharmacist, perpetuated what amounted to Medicare fraud, and damaged Mitri's reputation and well-being.  Third, there was financial vulnerability in that Walgreens's resources dwarfed those of Mitri, and Walgreens caused Mitri to lose seniority and contacts that had taken years to cultivate.  Fourth, Walgreens's conduct involved repeated actions in that Mitri suffered write-ups, was told to commit perjury concerning knowledge of fraud, and was then terminated. Fifth, Walgreens's conduct was not the result of accident, but was intentional and the result of a corporate culture.  In terms of the ratio of punitive damages, the amount awarded was within constitutional parameters.  Discrimination and retaliation cases have been recognized particularly to merit punitive damages.  Further, higher ratios of punitive to compensatory damages are upheld when the compensatory damages awarded are small or nominal.  Here, the compensatory damages were relatively modest at $88,000.  Also, Walgreens's financial condition is to be considered, and Walgreens has great wealth.  Given the modest compensatory damages awarded, the harm caused, and the wealth of Walgreens, the ratio in this case is permissible.

### _Legal Standard_

Punitive damages may be awarded to serve two policy interests:  punishing unlawful conduct and deterring its repetition.  BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996); Engquist v. Oregon Dep't of Ag., 478 F.3d 985, 1004 (9th Cir. 2007).  However, when a punitive damages award can fairly be categorized as "grossly excessive" in relation to these interests, then the damages award will violate the Fourteenth Amendment Due Process Clause.  BMW, 517 U.S. at 568; Hemming v. Tidyman's, Inc., 285 F.3d 1174, 1202 (9th Cir. 2002).  Courts consider three "guideposts" when evaluating a punitive damages award:  (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio to the actual harm inflicted on the plaintiff; and (3) civil or criminal penalties that could be imposed for comparable misconduct.  BMW, 517 U.S. at 575-83; Arizona v. Asarco LLC, 733 F.3d 882, 885 (9th Cir. 2013).  "These guideposts need not be 'rigidly or exclusively applied'; they merely provide a framework and must be viewed in the context of the case." Asarco, 733 F.3d at 885.

In evaluating the "reprehensibility" guidepost, courts are to consider whether:  the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003); Asarco, 733 F.3d at 886.  The reprehensibility factors fall "along a scale, with acts and threats of violence at the top . . . [and] acts of omission and mere negligence at the bottom."  Asarco, 733 F.3d at 886.  However, "reprehensibility should be discounted if defendants act promptly and comprehensively to ameliorate any harm they cause in order to encourage such socially beneficial behavior."  Bains LLC v. ARCO Prods. Co., 405 F.3d 764, 775 (9th Cir. 2005).

With respect to the "ratio" guide post, a punitive damages award is "supposed to sting," which means that "juries have traditionally been permitted to consider a defendant's assets in determining an award that will carry the right degree of sting.  But there are limits."  Baines, 405 F.3d at 777; see also White v. Ford Motor Co., 500 F.3d 963, 976 n.10 (9th Cir. 2007).  A defendant's wealth cannot justify an otherwise unconstitutional punitive damages award or make up for the failure of the other guideposts to significantly constrain an award that purports to punish a defendant's conduct.  State Farm, 538 U.S. at 427-28; White, 500 F.3d at 976 n.10; Baines, 405 F.3d at 777.  Further, there is no rigid benchmark that a punitive damages award may not surpass. State Farm, 538 U.S. at 425; Asarco, 733 F.3d at 888.  Relatively higher ratios, i.e. ratios beyond single digits, may comply with due process where "a particularly egregious act has resulted in only a small amount of economic damages" or where "the injury is hard to detect or the monetary value of the noneconomic harm might have been difficult to determine."  BMW, 517 U.S. at 582; Swinton v. Potomac Corp., 270 F.3d 794, 818 (9th Cir. 2001).

*Discussion*

Initially, Mitri's waiver argument has some persuasive force.  Because a Rule 50(b) motion is a renewed motion, and Walgreens did not (nor could it) challenge the amount of punitive damages in its Rule 50(a) motion, technically Walgreens's utilization of Rule 50(b) appears

1    improper.  Cf. Go Daddy, 581 F.3d at 961.  However, Walgreens challenged the amount of

2    punitive damages in its first Rule 50(b) motion after the amount of punitive damages had been

3    determined by the jury, and the Ninth Circuit remanded this case with instructions to consider

4    Walgreens's argument that the punitive damages were excessive.  See Doc. Nos. 105, 138.  "In

5    reviewing an award of punitive damages, the role of the district court is to determine whether the

6    jury's verdict is within the confines set by state law, and to determine, by reference to federal

7    standards developed under Rule 59, whether a new trial or remittitur should be ordered."

8    Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989); Pavon v. Swift Transp.

9    Co., Inc., 192 F.3d 902, 909 (9th Cir. 1999).  Even though Walgreens has not invoked Rule 59, the

10   Court will view Walgreens's challenge to the amount of punitive damages as one under Rule 59.

11   Cf. Williams v. Fenix & Scisson, Inc., 608 F.2d 1205, 1207 (9th Cir. 1979) (treating a Rule 50(b)

12   motion as a Rule 59 motion where defendant failed to make a Rule 50(a) motion).

13          The first guidepost is reprehensibility, which entails numerous considerations.  First, the

14   harm suffered by Mitri was economic and not physical.  It is true that Mitri testified that he

15   experienced anxiety, shame, and depression from Walgreens's actions, but the jury awarded zero

16   dollars for non-economic damages.  An award of zero dollars shows a rejection of Mitri's

17   testimony.  Second, the tortious conduct of Walgreens, i.e. the termination, was directed solely at

18   Mitri.  The health and safety of people other than Mitri were not implicated.  Third, Walgreens

19   was Mitri's employer, meaning that Mitri was dependent upon Walgreens for his livelihood.  See

20   Planned Parenthood of the Columbia/Willamette, Inc., v. American Coalition of Live Activists,

21   422 F.3d 949, 959-60 (9th Cir. 2005); Kauffman v. Maxim Healthcare Servs., Inc., 509 F.Supp.2d

22   210, 217 (E.D. N.Y. 2007).  Walgreens's termination also deprived Mitri of a job that he

23   thoroughly enjoyed and found especially satisfying.  See Cabral v. United States DOJ, 587 F.3d

24   13, 26 (1st Cir. 2009) (finding that "the jury rationally could have found that Sheriff Cabral caused

25   Ms. Porter to be deprived of a job she found especially satisfying for speaking to the FBI, knowing

26   full well that Ms. Porter's speech was constitutionally protected. Such conduct is certainly

27   reprehensible.").  Further, the reason given for termination, i.e. a reason that amounts to

28   misconduct, had the potential of affecting Mitri's ability to obtain work as a pharmacist.

1   Therefore, there is an element of financial vulnerability present.  Fourth, Mitri's termination in

2   January was the end result of a process that had begun the previous May.  When Mitri first

3   complained about billing fraud, he was given a Final Written Warning.  The Final Written

4   Warning did not appear legitimate, and it was the Final Written Warning that Walgreens used to

5   justify the termination.  Thus, the termination of Mitri was part of a months long process.

6   Although it does not appear that Walgreens has treated any other employee in a similar fashion,

7   the termination was not an isolated incident with respect to Mitri himself.  Fifth, the harm done to

8   Mitri was intentional, deceitful, and malicious.  The decisions makers intentionally terminated

9   Mitri because Mitri was complaining about billing fraud, utilized a false reason for the

10  termination, relied on a dubious final warning, lied to Mitri that he was being investigated, and did

11  not let Mitri defend himself in any way.  Neither the termination nor the events leading up to and

12  surrounding the termination were accidental.  Sixth, as an additional consideration, courts have

13  found that retaliation may be reprehensible conduct when an employee engages in protected

14  activity.  See Haynes v. Stephenson, 588 F.3d 1152, 1158 (8th Cir. 2009); Steffens v. Regus

15  Group, PLC, 2013 U.S. Dist. LEXIS 116536, *78-*79 (S.D. Cal. Aug. 16, 2013); Ogelsby v.

16  Western Stone & Metal Corp., 230 F. Supp. 2d 1184, 1193 (D. Or. 2001); Schutts v. Feldman,

17  1997 U.S. Dist. LEXIS 3428, *23-*24 (D. Conn. Feb. 18, 1997).  There is no dispute that Mitri's

18  complaints were protected activity, and the jury determined that Mitri was terminated solely

19  because he engaged in that protected activity.  Importantly, Mitri's complaints implicated possible

20  Medicare fraud.[5]  "Medicare fraud is a serious crime . . . which affects the financial integrity of a

21  program meant to aid tens of millions of people in need of health care.  Every dollar lost to fraud

22  is a dollar that could have provided medical care to the elderly or the disabled."  United States v.

23  Thurston, 456 F.3d 211, 220 (1st Cir. 2006);[6] see also United States v. Szilvagyi, 2007 U.S. Dist.

24  LEXIS 53243, *4-*5 (E.D. Mich. July 24, 2007); People v. Uribe, 199 Cal.App.4th 836, 875

25  (2011) (citing People v. Shrier, 190 Cal.App.4th 400, 418 (2010) and indicating that Medi-Cal

26  fraud may be a serious crime).  Terminating Mitri because of his complaints could well discourage

27
    [5] The Court notes that no finding of actual Medicare Fraud has been made in this case.

28  [6] Reversed on other grounds, 552 U.S. 1092 (2008).

1   others from bringing Medicare or Medi-Cal fraud claims to the attention of the appropriate people,

2   be they within or outside of Walgreens.  The totality of these considerations shows that Walgreens

3   engaged in a process of intentional and dishonest conduct against a vulnerable Plaintiff who made

4   protected complaints involving acts of possible Medicare and Medi-Cal fraud, which are serious

5   crimes.  Therefore, the degree of reprehensibility is high.

6        The second guidepost is the ratio between punitive damages and compensatory damages.

7   The jury awarded Mitri $1.155 million in punitive damages and $88,000 in compensatory

8   damages.  This is approximately a 13:1 ratio.  Generally, double digit ratios will be found to

9   violate the Fourteenth Amendment.  See State Farm, 538 U.S. at 425.  Mitri argues that an award

10  of $88,000 represents a small amount of compensatory damages.  However, in *Baines*, the Ninth

11  Circuit held that a $50,000 compensatory damages award was substantial and not small.  See

12  Baines, 405 F.3d at 776.  *Planned Parenthood* reiterated *Baines*'s holding that a $50,000

13  compensatory damages award was substantial and not small.  See Planned Parenthood, 422 F.3d at

14  957.  Therefore, Mitri was not awarded a small amount of compensatory damages.  See id.

15  Further, the Court disagrees with Mitri that his injury was hard to detect.  The termination, and the

16  conduct surrounding the termination and the Final Written Warning, were express, clear, and

17  open.  However, there are additional considerations.  Punitive damages are "supposed to sting."

18  The jury was informed that Walgreens is a multi-billion dollar publicly traded corporation.  It is

19  clear that an $88,000 compensatory damages award would be a trifling amount to Walgreens.  See

20  White, 500 F.3d at 976 n.10; Baines, 405 F.3d at 777.  Given how large Walgreens is, it is

21  debatable whether a $1.155 million award would be much of a sting.[7]  Further, the 13:1 ratio in

22  this case is not significantly larger than a 9:1 ration implicated by *State Farm*, or the

23  "breathtaking" 500:1 ratio of *BMW*.  See State Farm, 538 U.S. at 425; BMW, 517 U.S. at 583.

24  Therefore, the Court cannot find that the ratio is in and of itself unconstitutional.

25       Finally, neither side has addressed the third guidepost, comparable awards or penalties, in

26  any manner.  In the absence any arguments, the Court will view the third guidepost as neutral.

27

28  [7] The Court notes that Mitri requested that the jury award him $1.5 million in future economic loss alone.  The
compensatory damages and punitive damages actually awarded by the jury are less than $1.5 million.

In sum, the reprehensibility of Walgreens's conduct was high.  Although the compensatory damages awarded were substantial, those damages along with the punitive damages awarded were very low compared to Walgreens's net worth.  The actual dollar figures involved lessen the impact of the 13:1 ratio, and that ratio is not close to the "breathtaking" ratios in *State Farm* and *BMW*. Given the size of Walgreens, and considering the reprehensible nature of Walgreens's conduct, the $1.155 million award is not "grossly excessive" in light of the interests served by punitive damages, to punish and deter.  Walgreens's motion to reduce the punitive damages will be denied.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Walgreens's renewed Rule 50 motion is DENIED in its entirety.

IT IS SO ORDERED.

Dated: __December 3, 2014__                    _____

                                                          SENIOR  DISTRICT  JUDGE